The next case on this morning's docket is the case of Mary Melissa Frazier and Kevin Brett Frazier v. John Frazier. And we have here Jennifer Price for the appellant, and we have Chris Tuttle for the appellee. And you may proceed, Ms. Price, when you're prepared to. Thank you, Your Honor. May it please the Court, as Your Honor noted, I'm Jennifer Price. I'm from Guam and Guam Attorneys, and I represent Mary Melissa Frazier and Kevin Frazier, who were the plaintiffs in this matter and are the appellants in this case. I wanted to start out, first of all, by making it clear to the Court what this case is not about. This is not about a fiduciary relationship that arose due to one of the parties being in a significantly weaker bargaining position than the other. This isn't about an elderly person. Although the client was sick, or the deceived was sick at the time, we aren't taking the position that his sickness had anything to do with the fiduciary relationship. We're not contending that he had any less knowledge than the defendant in this case. He wasn't infirm in mind. He wasn't incompetent in any way. Instead, this is based upon a fiduciary relationship that arises as a matter of law, i.e., an agency relationship, similar to an attorney-client relationship, those type of relationships that come about as a result of the nature of the relationship. It's also not about a new influence. We're not claiming that the defendant somehow deluded the decedent into making the deed that is the subject of this matter in his favor. And we're not talking about a wrongful procurement of a deed. That's what this case is not about. Instead, the case is about a defendant, the brother of the decedent, who was an ill man at the time, who stood by as his brother recited what he wanted to have happen to his property and what he planned for his property after his death. It was recited in the presence of the defendant and the two plaintiffs in this matter, as well as the spouse of the decedent, who was the second wife. The mother of the two children that are my clients had been divorced from Mr. Brent Frazier for some time. But in any event, this is about a case where the defendant stood by as Mr. Brent Frazier recited his plan for the real estate that had been in this Frazier family or its ancestors for many, many decades. And it's undisputed in the record that it was the wish of Mr. Frazier, Mr. Brent Frazier, that the property continue to remain in the Frazier name as long as possible. No one can say how long it will happen, but that was the wish of this man. I may not have made it clear, but Mr. Brent Frazier owned an undivided one-half interest in the real estate as a result of inheriting from his mother, and his brother owned the other undivided one-half interest. They both had a great identity with this land, no doubt about it. And as the court can tell from examining the record, there's very little dispute about what was actually said at that hospital room where Mr. Frazier said what he wanted to have done. He said, undisputedly, that he was going to have it in the name of the brother so that the brother could take care of it so that the kids did not have to worry about it. The kids are, you know, 30 years old. The brother is a grown man, a businessman about the same age as the decedent. Now, if there had not been a will, how would it have passed? If there had not been a will, the brother, the decedent's undivided one-half interest would have passed one-half to the surviving spouse and one-half to the children. So the brother, the deceased brother, again, explains what he wants to have done. Mr. Randy Frazier, who is the defendant in this case, actually stood by and gave input into what he would be doing in the context of taking care of the land, such as paying taxes, insurance, so you kids don't have to worry about it. No problem there. The kids found out after the death of Mr. Brent Frazier that a quitclaim deed had been prepared and executed by Mr. Frazier. Norman Conrad, an attorney from Carlisle, had come out and done it. No question that Norman Conrad is a proper attorney and that he did what the client had asked him to do. We don't have any question about that. But what is significant is, in the record, Norman Conrad admits that he did not know of this conversation that took place at St. Lawrence Hospital. He admitted that he was not present when Mr. Brent Frazier delivered the deed to the defendant, and he had no knowledge of any conversation between the brothers, although he did state that when the brother was, I don't want to use the word confronted, but I guess I will, confronted with the conversation that took place at St. Mary's, that he did not deny that that had, in fact, occurred. Can I ask you a bit of clarification about a conversation that's stated in the brief? Well, it's actually supposedly, it was testimony of the brother that he said that when he was asked whether his brother had asked him to leave property to the kids, he told the decedent to leave it to the kids directly, if that's what he wanted to do. That was his testimony at trial, correct? That was his testimony under objection by us to leave safe. And when was that supposed to have taken place? That allegedly took place before the St. Mary's Hospital conversation. So... A private conversation between the decedent and his brother sometime in the early days of November. I believe that St. Mary's conversation took place in the latter part of November, but the private conversation took place prior to that. So when you say there's no real dispute about what was said at the hospital regarding, I guess, intentions, are you saying that the brother that said, and I'm forgetting his name, John? No, Randy. John Randy. Are you saying that he kind of acquiesced in his wishes? I mean, it does seem like there's a conflict between what he's testifying to with respect to Brett's wishes about passing it via him. Yes. How do you explain that? He acquiesced in it. I don't think it's necessarily contradictory. I think if you have to look at the testimony, which, as I said, we objected to, I don't think that forecloses the concept of the brother still saying, look, I want you to take care of it. And there were reasons, as pointed out by Norman Conrad, that one of my clients was subject to a restitution order, for example, and he wanted to protect that ground. Now, I don't think that the conversation, the private conversation where John Randall said, well, if you want it to go to the kids, just leave it to them directly. I don't think that necessarily means he's saying, if you leave it to me, it's gone, they're never going to get it. So I don't think it's necessarily contradictory. Of course, we believe it's inadmissible anyway. But I think what we have to look at is what is undisputed, what took place at St. Mary's Hospital. And one further bit of clarification, and I'll let you go on. I presume then the payment of the taxes for Brett's half interest and whatever else went with maintaining or keeping the property, Randy was just going to assume that responsibility gratuitously? Well, I think he was going to assume it because that is what his brother wanted. But additionally, he was able to derive the entire enjoyment of a real estate during the course of his life. Was it farmed or was there any income derived from it? I believe there is some income producing there. It's used, I think, a good deal by the defendant as hunting ground, but I'm certain that there is production and also there are mineral interests that are producing as well. You can proceed with your argument. All right. Getting back to one of the issues that we have, kind of a significant issue, I think, is the concept of the judicial admission. And we sought to ask Judge Lewis to consider the statements made in the deposition testimony by John Randall Frazier. And the judge refused to, saying that he did not believe that the promise was unequivocal. Well, you've got to look at the promise to determine whether or not it's unequivocal. Unequivocal means, well, maybe I will, maybe I won't. It doesn't have anything to do with I will leave this to your kids provided I don't have to use it for my own financial purposes. Now, that can be an unequivocal statement. It's not one of these, well, maybe I will, maybe I won't. It's under these conditions, this is what I'm intending to do and what I will do. So we believe that the court was wrong when he failed to consider the statements that were submitted in the form of a three- or four-page excerpt from depositions that were presented to the court at trial. I don't know if Your Honor wants me to go into exactly what they say because they're right there. But the main thing is it's none of the testimony that was proffered either at trial or by virtue of the admissions, even if the court determines that these aren't judicial admissions, contradicts the position of the plaintiffs that their uncle took a charge upon himself to take care of the property, use the property for his benefit, and subject to a very narrow condition, would then in turn leave the property to the kids. Now, I know that there's probably a question in Your Honor's mind if that was to be the entirety of the property or just the father's share. That's a very big question. It's not very clear. But my point is at the very least it would be an undivided one-half interest. That would be the interest of their father. And I would submit that it's up to Mr. Frazier what he intends to do with his share because he wasn't given consideration for that. We're not trying to claim that his undivided one-half interest necessarily has to go to the kids. With respect to the vagueness of this condition, you know, unless I need the property to, I guess, support myself or my wife, you don't think that the vagueness of that has anything to do with the validity of a promissory estoppel? No, I sure don't. Barry? I mean, it does seem like what if I feel like I need a Mercedes and, you know, my stocks have plummeted and I have to have that Mercedes. Is that something that you're, are you, is your position that that should be, I guess, litigated separately or how? No, Your Honor. I think what the brothers had in mind based upon what was stated was that if he needed it for his financial support. Well, that's the point I was making. I mean, we all have different levels of need, so to speak. Well, that's true, but I think that to look at this in a reasonable manner, it is, look, I want this to go on and on in the Frazier name, if at all possible, and you love this land as much as I do, and we don't want to sell it unless it's absolutely necessary. I think that is the intent that you can gather from this identity that these folks had for the land. And then you look at the financial condition of the defendant, which the judge let us get into a little bit, and that he admitted that the decedent knew about his financial position and that he was a prosperous businessman and he owned a $300,000 or $285,000 house. He owned a 2,800-square-foot garage in Perry, High End, being compulsive. Did that brother have children as well? No. Randy? No. So, I mean, plain devil's advocate, if it was left to that brother, it would still, I guess, remain in the Frazier name to that extent. Yes. If his intent was to leave it to the brother. Yes, as long as he lived, it would be in the Frazier name. That's right. That's exactly right. And when you couple that with the situation where he wanted, he being the decedent, wanted to protect the property as best he could from outside creditors, because undoubtedly if that had gotten into the name of the kids at that particular time, there is a possibility that the creditor could have glommed onto it. So this is a perfect way, in his mind, based on his trust of his brother, and I don't mean undue trust, I mean mutual respect, mutual respect for the land, mutual respect for each other's wishes, that it was reasonable for him to believe that his brother would protect that land. The brother wasn't subject to any financial problems that could potentially latch onto that land, and hopefully by the time it came time for those kids to take possession of the property, they would have grown up and there would have been no problems with creditors. So I think that that was what is shown to have been in the mind of this person when he went ahead and made the deed. And what explanation do you give for the fact that he never shared any of this intent with his attorney? I think that a lot of times, if Your Honor is like I am, there have been times when clients don't think that they have to disclose everything to the attorney. It operates to their detriment a lot of the time. But even as Norman Conrad admitted, no, he didn't share that with me, and it's not unusual in my 25 years of practice. It's often the case that a client, they think they know better than the lawyer, to be really honest. But wouldn't that also be evidence that that wasn't his intent? I don't think so. Wouldn't it be just as likely that it could be evidence if it wasn't his intent? I really don't see how that would be. Briefly, I'm not quite sure where to go with this point. If Your Honor has any questions about any of the theories that I have. No, I think they're laid out pretty well. And I wanted to make one comment about the standard of review as to hearsay evidence. And Ms. Tuttle believes that it is an abuse of discretion standard, but the law is that when it's a matter of question of law, which a question about hearsay evidence is to be considered by the court, that is a de novo review for the court to look at what the statement is and to make that determination. So I believe that needed to be cleared up. If I could take just a moment to look at my notes, please. Certainly. I also wanted to emphasize that once we've established an agency relationship, which I believe that the evidence shows there was an agency relationship by the acquiescence of the brother and the taking part by the brother in describing to the children how this is going to occur, then the burden of proof shifts to the defendant to prove by clear and convincing proof that he did not benefit as a result of his position as agent. And we take the position that we have shown that he, even though the burden isn't on us, but we have shown that he did, in fact, the moment he exceeded the scope of what his brother had said he wanted done with the property when he asserted that he had unfettered ability to determine when, how, who, if at all, he was going to give the property to those kids, that became a breach of the agency and he exerted control of the piece of full absolute. Okay. Thank you. Thank you. You'll have the opportunity for rebuttal. All right. Thank you. Thank you. Ms. Tuttle. May it please the court, counsel. I'm Chris Tuttle. I represent the defendant's appellee, Randy Frazier. I will refer to him as Randy. He is indicated in the caption as John R. Frazier. He is the uncle to the plaintiffs and he is the brother to the decedent. The trial court's judgment was based on counts three, four, and five that were the counts that the plaintiffs took to trial. Count four and count five are the only counts that the plaintiffs are appealing. Count four and count five both requested a constructive trust, and both counts should be viewed through the law of constructive trust. The plaintiffs requested that this constructive trust be imposed on 71 acres of real property in Jefferson County upon which a house was located and a mineral interest. The imposition of the constructive trust would thereby be contrary to the decedent's quitclaim deed to my client, Randy Frazier. I want to briefly review some of the significant facts and provide the court with a bigger picture of the chronology of some of the events. In the two brothers, Randy Frazier and the decedent, both owned an undivided half interest in this property. After high school, Randy lived in New Hampshire. Brett, the decedent, lived in Louisiana. Sometime in 2005, when the decedent found out that he had a recurrence of cancer, he moved back to Illinois to this family property site. During the months prior to his death, which was in February of 2007, the plaintiffs, his children, and my client, Randy, came in and spent time at his house, staying there with him, helping take care of him. The conversation that is at issue in this case that took place at the hospital occurred before Thanksgiving 2006. Then there was the conversation that has been discussed that was a private conversation between the decedent and Randy Frazier, which took place at some point within a few weeks to a month prior to that. Most importantly is the fact that after these conversations, and after the decedent made statements to the plaintiffs at the hospital before Thanksgiving of 2006, he met with his attorney, Norman Conrad, for estate planning purposes. He met with him at his house for approximately an hour, during which time he talked about his assets and he talked about what he wanted to do to transfer his assets. Things that he talked about to Norman Conrad, that Norman Conrad testified to, included that, yes, he wanted the property to stay in the family. However, he was also concerned about the property being sold at some point. He was worried about the plaintiff's creditors somehow attaching to the property and taking title to the property. He was worried about a restitution order, the details about which were not addressed. And after much discussion about what he would do with all of his assets, he advised his attorney that he wanted to give his property to Randy Frazier. He didn't want to put it in a trust. He didn't want it to go through the will. He wanted to do it in the least expensive manner, and he also told his attorney that he wanted to do it in a manner that would be least subject to challenge, which leads us to understand that, at some point, he was concerned that there might be a challenge to his transfer of this property. It was then after that meeting, which was approximately an hour after the Thanksgiving Conversation Hospital, Mr. Conrad was asked to prepare a deed to Randy. Excuse me, we know all this factually that you've just discussed because of Mr. Conrad's testimony? Yes. So Mr. Conrad prepared the deed. He went back. He took it. He talked to the decedent about the deed. The decedent executed the deed. It was delivered to Randy, and Randy reported it. So that was a second meeting that the decedent had with his attorney. Then there was a third meeting that the decedent had with his attorney, and that was when his attorney returned with the will, and the decedent executed the will, which was on December 9th. At no time did Attorney Conrad have any conversations with Randy about his brother's transfer of the property to him. There were no conversations with Attorney Conrad between the decedent and him at any time after any of this occurred. So we are left to infer that the decedent was satisfied with his estate planning and satisfied with his conveyance of the property to his brother. And thus, the last expression of the decedent's intent with regard to his transfer of the property is his conversations with the attorney, Norman Conrad, and his execution of this deed to his brother knowingly, deliberately, through his own volition. Those are the significant facts that I wanted to bring out. Now, both of the counts that are at issue in this appeal request the imposition of a constructive trust. When we look at this case, when we step back and look at the big picture, the plaintiffs are requesting that there is enforcement of this alleged oral agreement for a trust. So, can that be done? We have to look at the statute of frauds, which says if there is any type of oral trust with regard to lands, that's void, unless there is a request for a constructive trust. So what is the law in Illinois on constructive trust? It is very clear through Illinois Supreme Court law, and this court has addressed it, in the Leek v. Quirin case in 1990 and in Ray Marriage of Humphrey in 1991. To have a constructive trust, there has to be either fraud or a fiduciary relationship and a breach thereof. There is no allegation in this case of there being any fraud, and the plaintiffs have stated here in court that they are not claiming any undue influence. If there is no undue influence in this case, then the plaintiff's claims for constructive trust fail. The law is very clear. There must be a fiduciary relationship and a breach thereof. The language that is used by the courts with regard to breach of the fiduciary relationship includes things like wrongdoing, overreaching, not a mere breach of an oral agreement, or procurement of the deed. There's simply none of that in this case. And the court, in its judgment, stated very clearly there was no fiduciary relationship, no undue influence. I think that it bears addressing in this case that even if the court were to get to some point where the court wants to impose a constructive trust in this case, the terms of the trust are not at all clear. It would be very difficult to try and put together something and order Randy Frazier to execute some type of deed or for some trustee to try and execute some type of trust when the terms are not at all clear, which just brings us back to the whole reason for the law of constructive trust. When we look at the conversation at the hospital, it is not entirely clear exactly which property is being discussed. There was some statements, the house and the land and stuff like that. Well, the subject of the complaint is the 71 acres upon which the house sits and a mineral interest. The mineral interest is never mentioned at all during any of these conversations. There's no discussion about how the parties would hold title to the property, tenants in common or joint tenancy. Would the plaintiffs have some type of limitation on their power to sell the property? How much would the plaintiffs get? Would they get only their father's half interest or would they get a full interest to the property such that there is a very difficult, it would be difficult for the court to try and fashion some type of trust. Thus, the trial court's judgment was not against the manifest weight of the evidence. An opposite conclusion is not apparent and the findings do not appear to be unreasonable or arbitrary or not based on the evidence. The trial court obviously spent some time in considering the evidence and in setting forth its judgment  The plaintiffs have fashioned counts four and five as a breach of agency and a promissory estoppel count in count five. The promissory estoppel count is interesting. It really does not fit this case. Promissory estoppel was first recognized as a cause of action by the Supreme Court in 2009, whereas before it was just a defense. It's not apparent that promissory estoppel cause of action was really meant to be extended to this type of case where you have more of a third-party beneficiary type of claim. The first element of promissory estoppel claim is that the plaintiff made an unambiguous promise, I'm sorry, that the defendant made an unambiguous promise to the plaintiff. Well, stopping right there, we don't have that in this case. The allegations have always been that Randy made an unambiguous promise to the decedent. Well, first of all, we don't have an unambiguous promise. That's very well stated by the trial court after viewing all the evidence. But the promise that has always been alleged by the plaintiffs was by Randy to the decedent. The first element of promissory estoppel is that the promise is made by the defendant to the plaintiffs. And then the other elements of promissory estoppel then fail thereafter because there's a requirement that the plaintiffs relied on the promise, the reliance was expected, and the reliance was to the detriment of the plaintiffs, and which is stated in Newton Tractor Sales, the detriment must be some type of financial loss or assumed liability, which we don't have here. The burden of proof on both of those counts is clear and convincing evidence. The plaintiffs did not prove their case by clear and convincing evidence. With regards to the arguments made by plaintiffs as to the question and answer to which they objected as hearsay, the trial court was very clear that it was admitting that testimony not for the truth of the matter asserted. And that type of testimony is allowed in showing the state of mind of somebody that is being set forth as having engaged in an agreement or setting up an agency relationship. The trial court did not abuse its discretion in refusing to admit the discovery deposition testimony of Randy Frazier. The deposition testimony that was provided to the court was in four pages of single-spaced typewritten print, and first of all, was not an admission of anything. It was not a clear and deliberate unequivocal statement. Plaintiffs did not point to any one particular area of the deposition testimony where they could say this was an admission in particular. It was all just this kind of all of it all together. And the testimony was not about a concrete fact. In addition, the trial court did say in its judgment that even if it had, first of all, that that testimony did come in at trial, and that even if it had looked at that as a judicial admission, it wouldn't have changed its mind on its decision. The most outstanding issue, I think, in this case is the idea that we have a grantor who knowingly made a conveyance, and there is absolutely no evidence and no argument that when he did so, he did it as a result of coercion or undue influence. The trial court's judgment was correct, and it should be affirmed by this court. Thank you. Thank you, Ms. Tuttle. Ms. Frazier, you have the opportunity to rebut. Thank you. Quoting from the admission. Question. But you must agree that the only reason he believed that you wouldn't give it to Missy and Kevin was because you might have to use it for your old age, correct? That's basically true, yes. Continuing to quote. But when you accepted to title to the deed, the only discussion that you had about the only way that these kids wouldn't inherit it is if you had to resort to selling it for your old age? Answer. But that wasn't the agreement. Question. But that's what you said to him, right? Answer. That's what I said to him. So if that's not setting up a promissory estoppel, I don't know what is, because here you've got Brent Frazier with this unambiguous promise, as we've discussed about before what I believe an unambiguous promise constitutes. We have a detrimental reliance because Brent Frazier, believing that his brother was going to do what he said he would do, didn't take steps to put it in a trust, to put it in a will, to do it in some other fashion. He detrimentally relied that his brother, if he gave it to him, would in turn make certain that it goes to the kids, subject to the very narrow exception, if he needed it for his old age. And those are judicial admissions. They are unequivocal. The defendant has, there was no mistake in the questioning of the deposition. It wasn't an offhand remark. It was reiterated two or three times. It's interesting that counsel complains about the length of what was submitted to the court, given the fact that she's arguing on one hand that hearsay evidence can come in as context. Well, that's what this was. It was putting what the guts of the admission was into context. And we believe that Judge Lewis was erroneous when he failed to consider that a binding admission, not subject to attack. The statute of frauds. The statute of frauds, first of all, we believe that we've shown a good reason for constructive trust. We've shown a fiduciary relationship and a breach thereof. In fact, not only did Mr. Randy Frazier breach the fiduciary relationship when he said, you know, I don't have to give it to you unless I want to, in essence. I'm not quoting verbatim, but that's basically what he said. He also admitted that he already has made a will where it's going to go to the Gilead Cemetery Fund. So that is, in writing, a breach of his fiduciary obligation. As to the promissory estoppel not being able to benefit the kids, because it's an extension of what the Supreme Court said into a third-party beneficiary situation, I think it's a classic case for it because the decedent's wishes are the things that are being awarded. If the promissory estoppel is not held to this case, then we have a situation where a decedent who can't do anything about it now has given property to someone that he trusted to do what they had discussed, and now the man is not doing it, and, you know, there's nothing that can be done at this point in time. As I said, the testimony is not that different from what the defendant says and what the plaintiffs say. And I think it's clear that Mr. Randall Frazier had indicated that his brother knew that if he said he would do something, he would do it. So I believe that the situation is a classic one for imposition of a constructive trust. If we were to rescind the deed, I think I've pointed out in my brief that that would thwart the intentions of the decedent because he didn't want it to go to his wife. And speaking of what challenges might have come down the pike, Ms. Tuttle jumps to the conclusion that he's thinking of challenges by his kids, but there's a spouse out there that had there been this given in a will, she could have renounced the will and taken an undivided one-third statutory share, as well as other issues such as will contests and so forth. So, therefore, I ask this Court to use its powers to fashion a constructive trust that I don't believe would be beyond the scope of the power or the intellect of this Court to do it so as to carry out the terms of what Brent Frazier won. Thank you. Thank you, Ms. Price.